IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Inam Naji,<br><br>            Plaintiff,<br><br>vs.<br><br>Fluor Federal Services, LLC,<br><br>            Defendant. | Case No: 6:19-cv-01774-HMH-JDA<br><br>*[PROPOSED]*<br><br>**AMENDED COMPLAINT** |

Plaintiff Inam Naji, through her undersigned attorney, alleges as follows:

1. Plaintiff is a resident of Greenville County, South Carolina. She is a native of Iraq, where she lived until moving to Greenville County in 2007.

2. Plaintiff is a practicing Muslim.

3. Defendant Fluor Federal Services, LLC, is a foreign corporation doing business in Greenville County, South Carolina.

4. Defendant is an employer for purposes of Title VII of the Civil Rights Act of 1964, as amended.

5. This Court has jurisdiction over this case pursuant to Title VII of the Civil Rights Act of 1964, as amended.

6. Plaintiff was employed by Defendant in Greenville County, South Carolina, where the acts and omissions alleged herein occurred.

7. Plaintiff began working for Defendant and/or an affiliated corporation while living in Iraq.

8. In or about 2007, Plaintiff legally emigrated to the United States and began working for Defendant in Greenville County. She became a United States citizen in 2012.

1

9. Plaintiff worked for Defendant in Greenville County at all times thereafter until she was terminated without notice in June 2017.

10. Plaintiff was an above average employee who received favorable evaluations and regular pay increases throughout her employment.

11. In or about 2010, Plaintiff was began working under a new supervisor, Mia Sullivan.

12. Sullivan was harsh and abusive toward employees generally but had a particular animus against Plaintiff due to Plaintiff's religion and national origin.

13. Sullivan yelled and screamed at Plaintiff and regularly assigned Plaintiff more difficult and menial work than her peers.

14. Plaintiff was approached by co-workers who observed Sullivan's treatment of her and inquired whether Plaintiff was being fired.

15. When Plaintiff was suffering from allergies, Sullivan would claim that Plaintiff had a contagious illness and would insist that she stay home from work.

16. Plaintiff has given birth to three children after being married in 2012. Sullivan made denigrating comments to Plaintiff, claiming that Plaintiff was "always pregnant."

17. Sullivan criticized various aspects of Plaintiff's Muslim faith, including her practice of fasting and wearing long sleeves and a head scarf.

18. In response to Plaintiff's request for information about eligibility for a pay raise, Sullivan told Plaintiff that she was already being paid too much and that she probably made more in one day than she had made in a month when she lived in Iraq.

19. On one occasion, Sullivan told Plaintiff that "I am your God" and that Plaintiff could not do anything without Sullivan's permission.

20. On another occasion, Sullivan explained that she had the ability to monitor Plaintiff's email, and that "I can read anything you write."

21. In March 2017, Plaintiff made a complaint to a Human Resources representative about the religious and national origin discrimination and harassment she was experiencing.

22. Several days after Plaintiff's complaint, Sullivan placed her on a Performance Improvement Plan.

23. The items used by Sullivan to justify the performance improvement plan had obviously been cobbled together to provide a cover for the true reason for the performance improvement plan – to punish Plaintiff for complaining about discrimination and harassment.

24. For example, the performance improvement plan included alleged performance deficiencies that were as many as nine months old, and many of which were never previously brought to Plaintiff's attention.

25. Most of the items on the Performance Improvement Plan were exceedingly trivial, such as an allegation that Plaintiff had worked late on one occasion in June of the preceding year, an allegation that on one occasion Plaintiff had completed a task in the afternoon that she was supposed to have completed in the morning, and an allegation that Plaintiff stacked files in such a way that the files fell off a shelf. The items in the Performance Improvement Plan were no different than the minor performance deficiencies of numerous other members of Plaintiff's department who were not placed on Performance Improvement Plans.

26. Defendant never intended the Performance Improvement Plan to be used as a performance improvement tool. Although Sullivan was supposed to meet with Plaintiff every two weeks to discuss Plaintiff's performance, no such meetings took place. Although Plaintiff carefully complied with the requirements of the Performance Improvement Plan, she never received any feedback, coaching or updates.

27. Plaintiff continued to experience unlawful harassment and unwarranted criticism of her work performance after the issuance of the Performance Improvement Plan.

28. On or about June 15, 2017, less than two weeks before the Performance Improvement Plan was set to expire, Sullivan and another employee approached Plaintiff at Plaintiff's work station carrying cardboard boxes.

29. Sullivan told Plaintiff she was fired and instructed her to use the boxes to remove her personal effects, then leave the premises.

30. Plaintiff asked Sullivan why she was being fired but Sullivan refused to respond.

31. Following her termination, Plaintiff attempted repeatedly to seek redress through Defendant's internal grievance protocol. After claiming to have investigated Plaintiff's complaints, Defendant informed her that it would not reconsider her termination but that she was free to apply for other positions.

32. Plaintiff has applied for more than 40 other jobs with Defendant, all of which she was qualified for, but has not been interviewed or selected for any position.

33. Plaintiff timely filed a charge of the discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) alleging unlawful religious and national origin discrimination and retaliation by Defendant.

34. Plaintiff has received a right to sue notice from the EEOC and has satisfied all administrative prerequisites prior to timely filing this action.

**Count I**
**For A First Cause of Action**
**National Origin Discrimination – 42 U.S.C. 2000e, *et. seq.***

35. Plaintiff incorporates by reference the foregoing allegations as if set forth here in full.

36. Plaintiff is an employee for purposes Title VII of the Civil Rights Act of 1964, as amended.

37. Defendant is an employer for purposes Title VII of the Civil Rights Act of 1964, as amended.

38. Defendant subjected Plaintiff to discrimination on the basis of her national origin with respect to the terms and conditions of her employment, including, *inter alia*, subjecting her to disparate discipline and work standards, placing her on a Performance Improvement Plan without cause, terminating her employment, and refusing to hire her or consider her for employment.

39. Defendants' discrimination against Plaintiff was willful, deliberate, reckless and/or malicious.

40. Plaintiff is entitled to reinstatement, an award of lost wages (back and front pay) and employment benefits, compensatory and punitive damages, equitable relief as the Court may deem appropriate, the costs of this action, attorney fees, and pre- and post-judgment interest.

**Count II**
**For A Second Cause of Action**
**Religious Discrimination – 42 U.S.C. 2000e,** *et. seq.*

41. Plaintiff incorporates by reference the foregoing allegations as if set forth here in full.

42. Plaintiff is an employee for purposes Title VII of the Civil Rights Act of 1964, as amended.

43. Defendant is an employer for purposes Title VII of the Civil Rights Act of 1964, as amended.

44. Defendant subjected Plaintiff to discrimination on the basis of her religion – Islam – with respect to the terms and conditions of her employment, including, *inter alia*, subjecting her to disparate discipline and work standards, placing her on a Performance Improvement Plan without cause, terminating her employment, and refusing to hire her or

consider her for employment.

45. Defendants' discrimination against Plaintiff was willful, deliberate, reckless and/or malicious.

46. Plaintiff is entitled to reinstatement, an award of lost wages (back and front pay) and employment benefits, compensatory and punitive damages, equitable relief as the Court may deem appropriate, the costs of this action, attorney fees, and pre- and post-judgment interest.

**Count III**
**For A Third Cause of Action**
**Unlawful Retaliation – 42 U.S.C. 2000e, *et. seq*.**

47. Plaintiff incorporates by reference the foregoing allegations as if set forth here in full.

48. Plaintiff engaged in protected activity by raising internal complaints of religious and national origin discrimination.

49. In retaliation for Plaintiff's internal complaints, Defendant placed her on a Performance Improvement Plan without cause, unfairly scrutinized and criticized her work performance, fired her, and refused to hire her or consider her for employment.

50. Defendant's retaliation against Plaintiff was willful, deliberate, reckless and/or malicious.

51. Plaintiff is entitled to reinstatement, an award of lost wages (back and front pay) and employment benefits, compensatory and punitive damages, equitable relief as the Court may deem appropriate, the costs of this action, attorney fees, and pre- and post-judgment interest.

WHEREFORE, Plaintiff respectfully requests a trial by jury on her claims and that she be granted all available relief including, but not limited to, reinstatement, an award of lost wages (back and front pay) and employment benefits, compensatory and punitive damages, equitable relief as the Court may deem appropriate, and all other and further relief as to the Court appears

necessary and proper, including, but not limited to, the costs of this action, attorney fees, and pre- and post-judgment interest.

Respectfully submitted this __th day of June, 2019.

s/ Jeffrey P. Dunlaevy<br>
Jeffrey P. Dunlaevy (SC Bar No. 16978)<br>
Dunlaevy Law Firm<br>
37 Villa Road, Suite 440<br>
Greenville SC 29615<br>
864.208.9274<br>
jeff@dunlaevylaw.com