IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Inam Naji, | ) | |
| | ) | C.A. No. 6:19-1774-HMH-JDA |
| Plaintiff, | ) | |
| | ) | **OPINION & ORDER** |
| vs. | ) | |
| | ) | |
| Fluor Federal Services, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court with the Report and Recommendation of United States Magistrate Judge Jacquelyn D. Austin, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 of the District of South Carolina.[1] Plaintiff Inam Naji ("Naji") alleges national origin and religious discrimination and retaliation claims against Defendant Fluor Federal Services, LLC, ("Fluor") under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Civil Rights Act of 1991, 42 U.S.C. 2000(e), et seq., and 42 U.S.C. § 1981. Fluor filed a motion for summary judgment. (Mot. Summ. J., ECF No. 34.) In her March 5, 2021 Report and Recommendation, Magistrate Judge Austin recommends granting in part and denying in part Fluor's motion for summary judgment. (R&R, ECF No. 52.) For the reasons stated below, the court adopts the Report and Recommendation.

---

[1] The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. See 28 U.S.C. § 636(b)(1).

1

## I. FACTUAL AND PROCEDURAL HISTORY

The facts are more fully set out in the Report and Recommendation. (See R&R 1-16, ECF No. 52.) Naji, an Iraqi native and practicing Muslim, began working with Fluor in 2005 while living in Baghdad. (Resp. Ex. 1 (Naji Dec. ¶¶ 2-3, 9), ECF No. 37-1.) In late 2007, Naji moved to the United States where she continued working with Fluor in Greenville, South Carolina. (Id. Ex. 1 (Naji Dec. ¶¶ 19-22), ECF No. 37-1.) In January 2009, Naji began working on the Material Management Closeout Team. (Mot. Summ. J. Ex. B (Sullivan Dec. ¶ 5, ECF No. 34-3.) Mia Sullivan ("Sullivan"), the Closeout Manager for the Material Management Closeout Team, was Naji's supervisor beginning in 2010. (Id. Ex. B (Sullivan Dec. ¶ 5, ECF No. 34-3.) Under Sullivan, Naji first worked as a File Technician and subsequently worked in the Warehouse Closeout Group until late 2015. (Id. Ex. B (Sullivan Dec. ¶ 5, ECF No. 34-3.) In January 2016, Naji moved to the Closeout Support Group, where she worked until her termination in June 2017. (Resp. Ex. 1 (Naji Dec. ¶¶ 23, 45), ECF No. 37-1.) Under Sullivan's supervision, Naji received "numerous pay raises" and, at the time she was terminated, "was one of the highest paid members of Closeout Support." (Mot. Summ. J. Ex. B (Sullivan Dec. ¶ 22), ECF No. 34-3.)

The Closeout Support Group processed files received from Fluor's locations around the world and prepared them for delivery to Project Data and Document Management ("PDDM" or "DDM") for retention purposes. (Resp. Ex. 3 (Sullivan Depo. 8-13), ECF No. 37-3.) The work flow was organized through a series of fluctuating group goals, and the work was divided equally among the team members. (Id., Ex. 3 (Sullivan Depo. 8-13), ECF No. 37-3.) In a

typical week, the group would be responsible for achieving five discrete metrics, including "box goals."[2]  (Id., Ex. 3 (Sullivan Depo. 8-13), ECF No. 37-3.)

Naji claims that, within a few years of joining Fluor in Greenville, Sullivan and some of her co-workers began treating her differently due to her Iraqi heritage and Muslim faith.  (Resp. Ex. 1 (Naji Dec. ¶¶ 24-27), ECF No. 37-1); (Id. Ex. 2 (Naji Depo. 21-23), ECF No. 37-2.) Specifically, Naji claims that Sullivan and others would criticize her clothing, her practice of fasting during Ramadan, the relationship between Islamic men and women, and her speaking Arabic in private telephone conversations.  (Id. Ex. 1 (Naji Dec. ¶¶ 25-27), ECF No. 37-1); (Id. Ex. 2 (Naji Depo. 21-23), ECF No. 37-2.)  Naji also claims that Sullivan told her that she was "God" and that she was monitoring Naji's email and Sametime[3] messages.  (Id. Ex. 1 (Naji Dec. ¶ 30), ECF No. 37-1); (Resp. Ex. 2 (Naji Depo. 24-25), ECF No. 37-2.)

In January 2015, Naji complained to Sullivan that two Fluor employees had discriminated against her because she was "different."  (Mot. Summ. J. Ex. B (Sullivan Dec.

---

[2] Fluor explained:

A typical set of weekly goals for Closeout Support in Spring of 2017 may have been: sending 40 boxes of miscellaneous documents to DDM; checking in a fluctuating number of incoming field files within a 48-hour timeframe; checking the group mailbox and responding within a set time to other . . . team members who needed certain files located and pulled as requested by auditors and/or buyers; sending at least 100 PO file transmittals to DDM; and closing and transmitting 50 Federal Supply Services files to PDDM.

(Mem. Supp. Summ. J. 3 n.6, ECF No. 34-1.)

[3] Sametime is an instant messaging software used within Fluor.  (Reply Ex. 2 (Snow Dec. 2 n.1), ECF No. 42-2.)

3

¶ 25 & Ex. E), ECF No. 34-3); (Id. Ex. D (Willis Dec. ¶ 11), ECF No. 34-7.)  Naji's complaints were investigated by Senior Human Resources Specialist Joy Willis ("Willis") who concluded neither employee engaged in misconduct and that the discrimination claims were unsubstantiated.  (Id. Ex. D (Willis Dec. ¶ 11), ECF No. 34-7.)  However, Willis counseled one of the employees on "the importance of cultural awareness, perception and sensitivity."  (Id. Ex. D (Willis Dec. ¶ 11), ECF No. 34-7.)

On June 10, 2015, Sullivan issued a "Memorandum for Record" ("MFR") confirming a verbal counseling with Naji for the "appearance of sleeping."[4]  (Id. Ex. B (Sullivan Dec. ¶ 26 & Ex. F), ECF No. 34-3.)  Naji then complained to Sullivan that she was being targeted for being "different" and no longer felt safe in her work environment.  (Mot. Summ. J. Ex. A (Naji Depo. 57-60), ECF No. 34-2); (Id. Ex. B (Sullivan Dec. ¶ 26), ECF No. 34-3.)  Sullivan reported Naji's concerns to Willis, who investigated the allegations and deemed them to be without merit.  (Id. Ex. B (Sullivan Dec. ¶ 26), ECF No. 34-3); (Id. Ex. D (Willis Dec. ¶ 12), ECF No. 34-7.)

In early 2017, Naji lodged another discrimination complaint.  (Resp. Ex. 1 (Naji Dec. ¶ 33), ECF No. 37-1.)  Naji felt she was targeted and discriminated against by Sullivan.  (Id. Ex. 1 (Naji Dec. ¶ 33), ECF No. 37-1.)  Because Naji did not approve of how Willis had handled her past complaints, she instead contacted Human Resources Manager Holly Snow ("Snow")

---

[4] An employee notified Sullivan that Naji was sleeping at her desk.  (Mot. Summ. J. Ex. B (Sullivan Dec. ¶ 26 & Ex. G), ECF No. 34-3.)  Sullivan went to check on Naji, but did not observe her sleeping.  (Id. Ex. B (Sullivan Dec. Ex. G), ECF No. 34-3.)  Sullivan told Willis that Naji had recently informed her that she was pregnant and very tired.  (Id. Ex. B (Sullivan Dec. Ex. G), ECF No. 34-3.)  Sullivan further told Willis that she had previously spoken to Naji about "nodding off" in meetings.  (Id. Ex. B (Sullivan Dec. Ex. G), ECF No. 34-3.)

about her complaint. (Id. Ex. 1 (Naji Dec. ¶¶ 32, 34), ECF No. 37-1); (Reply Ex. B (Snow Dec. ¶ 3), ECF No. 42-2.) It is undisputed that Naji reached out to Snow via Sametime and that a meeting was set for March 14, 2017. (Resp. Ex. 1 (Naji Dec. ¶ 35), ECF No. 37-1); (Reply Ex. B (Snow Dec. ¶ 3), ECF No. 42-2.) However, the parties dispute the timing and contents of the messages between Naji and Snow.

Naji claims that she "sent several Sametime messages to [ ] Snow in late February and early March 2017" explaining that she wished to file a discrimination complaint against Sullivan. (Resp. Ex. 1 (Naji Dec. ¶ 34), ECF No. 37-1.) Snow claims that March 8, 2017 was the only day Naji sent her a message. (Id. Ex. 5 (Snow Depo. 5), ECF No. 37-5.); (Reply Ex. B (Snow Dec. ¶ 3), ECF No. 42-2.) Further, Snow claims that Naji did not inform her in the March 8, 2017 Sametime conversation, or at any other time before their March 14, 2017 meeting, why she wanted to meet with Snow or that she wanted to file a discrimination complaint. (Reply Ex. B (Snow Dec. ¶ 3), ECF No. 42-2.)

According to Snow, after receiving Naji's March 8, 2017 Sametime message, she asked Willis if she knew of any issues involving Naji. (Id. Ex. B (Snow Dec. ¶ 4), ECF No. 42-2.) Snow claims Willis informed her of performance problems and forwarded emails to her regarding the problems. (Id. Ex. B (Snow Dec. ¶ 4), ECF No. 42-2.) Snow also claims that prior to her March 14, 2017 meeting with Naji, Willis informed her that Sullivan "was considering placing Naji on a performance improvement plan" or "PIP." (Id. Ex. B (Snow Dec. ¶ 4), ECF No. 42-2.)

On March 8, 2017, the same day that Snow received Naji's Sametime message, Sullivan sent several emails to Willis regarding Naji. (Resp. Ex. 8 (Performance Records March 2017

5

16-19), ECF No. 37-8.)  One email included comments about time-management issues from Naji's three most recent annual performance evaluations.  (Id. Ex. 8 (Performance Records March 2017 17-18), ECF No. 37-8.)  In two other emails, Sullivan informed Willis that Naji had complained about having to remove staples from files and that Naji was responsible for some files that fell onto the floor.  (Id. Ex. 8 (Performance Records March 2017 16, 19), ECF No. 37-8.)  Around March 15, 2017, Sullivan decided to place Naji on a PIP.  (Mot. Summ. J. Ex. B (Sullivan Dec. ¶ 14), ECF No. 34-3.)  Sullivan and Willis drafted the PIP and formally issued it on March 24, 2017.  (Id. Ex. A (Naji Depo. (Ex. 25 PIP) 260-64), ECF No. 34-2); (Id. Ex. C (Sullivan Depo. 29, 44), ECF No. 34-4.)

The PIP's "Supporting Facts and Details" section stated, "For the last several months, you have developed a pattern of not completing your assigned job duties.  In addition, you have had several conversations, coaching sessions, [and] email reminders to address your work performance."  (Id. Ex. A (Naji Depo. (Ex. 25 PIP) 260), ECF No. 34-2.)  The section included 14 examples of Naji's failure to complete assignments.[5]  (Id. Ex. A (Naji Depo. (Ex. 25 PIP) 260), ECF No. 34-2.)

The PIP required Naji to meet deadlines and adhere to management directives, prioritize tasks appropriately during the allotted work hours, refrain from seeking assistance from co-workers in completing work, complete tasks as directed, work her assigned hours, effectively manage her time, and complete Fluor's time-management course.  (Id. Ex. A (Naji Depo. (Ex.

---

[5] The report and recommendation noted that though the PIP contained the language "[f]or the last several months," six of the examples were from June to October of 2016 and eight were in March 2017.  (R&R 10-11, 30-31, ECF No. 52.)  The PIP did not include any events between October 26, 2016 and March 7, 2017.  (Mot. Summ. J. Ex. A (Naji Depo. (Ex. 25 PIP) 260), ECF No. 34-2)

25 PIP) 261-62), ECF No. 34-2.)  Naji was expected to make "[i]mmediate and sustained improvement."  (Id. Ex. A (Naji Depo. (Ex. 25 PIP) 262), ECF No. 34-2.)  If the required changes occurred, the PIP would be concluded.  (Mot. Summ. J. Ex. A (Naji Depo. (Ex. 25 PIP) 262), ECF No. 34-2.)  However, if the required changes did not occur, further remedial action would occur, "up to and including termination of employment."  (Id. Ex. A (Naji Depo. (Ex. 25 PIP) 262), ECF No. 34-2.)  The "Monitoring Period" for the PIP was from March 24, 2017 to May 24, 2017.  (Id. Ex. A (Naji Depo. (Ex. 25 PIP) 263), ECF No. 34-2)

      The PIP was signed by Sullivan on March 24 and by Willis on March 27.  (Id. Ex. A (Naji Depo. (Ex. 25 PIP) 263), ECF No. 34-2.)  The PIP was not signed by Naji.  (Id. Ex. A (Naji Depo. (Ex. 25 PIP) 263), ECF No. 34-2.)  Naji stated that she refused to sign because she believed that the PIP was issued in retaliation for complaining about Sullivan and to lay the groundwork for terminating her.  (Resp. Ex. 1 (Naji Dec. ¶ 39), ECF No. 37-1.)  However, Naji also stated that she worked hard to complete the PIP and believed that she had successfully achieved the goals set forth in the PIP by May 24, 2017, the end of the Monitoring Period.  (Id. Ex. 1 (Naji Dec. ¶¶ 40-41, 43), ECF No. 37-1.)

      Following the issuance of the PIP, several allegations about Naji were reported to Sullivan.  On May 15, 2017, Naji's co-workers informed Sullivan that the week before, Naji had asked them for help completing her work and then had left her work area for 45 minutes. (Mot. Summ. J. Ex. A (Naji Depo. (Ex. 36 Email) 280), ECF No. 34-2.)  According to Sullivan, the co-workers were upset about the situation because they had to complete Naji's work assignment in order to meet a deadline.  (Id. Ex. A (Naji Depo. (Ex. 36 Email) 280), ECF No. 34-2.)  On May 18, 2017, one of Naji's co-workers emailed Sullivan complaining that Naji

refused to complete boxes that had been assigned to their team. (Id. Ex. A (Naji Depo. (Ex. 37 Email) 281), ECF No. 34-2.) The co-worker also stated that Naji was storing boxes under her desk and saving them to work on later. (Id. Ex. A (Naji Depo. (Ex. 37 Email) 281), ECF No. 34-2.) On June 5, 2017, a Fluor employee who processed file boxes after the Closeout Support Group finished working on them informed Sullivan that some of the boxes processed by Naji had "files needing [to be] separated into individual folders and transmittal errors corrected (typos and box contents adjusted)." (Resp. Ex. 9 (Performance Records Post March 2017 28-29), ECF No. 37-9.)

On June 6, 2017, Snow issued a report concluding that Naji's allegations that Sullivan had been discriminating against her and unfairly targeting her were unfounded. (Mot. Summ. J. Ex. E (Snow Depo. (Ex. 11 Report) 29-31), ECF No. 34-6.) Regarding the allegations in the May 18, 2017 email, Snow found the allegation that Naji refused to do her work was false. (Id. Ex. E (Snow Depo. (Ex. 11 Report) 31, ECF No. 34-6.) However, the report found that Naji "had a history of not pulling her weight in the group and not meeting the goals that were assigned to her." (Id. Ex. E (Snow Depo. (Ex. 11 Report) 31, ECF No. 34-6.)

On June 8, 2017, Sullivan emailed Willis, noting that she was ready to "releas[e]" Naji based on the following grounds: "[e]rrors in transmittals to DDM (see [forwarded email])," "[o]ther team members completing work on her behalf so that files are left to be completed on her off Friday," and "[w]eekly goal not met on [weeks ending] 4/21/17, 4/28/17." (Resp. Ex. 9 (Performance Records Post March 2017 27), ECF No. 37-9.) Naji was terminated by Sullivan on June 15, 2017. (Id. Ex. 1 (Naji Dec. ¶ 45), ECF No. 37-1.) Following her termination, Naji applied for over 70 different positions with Fluor. (Mot. Summ. J. Ex. D (Willis Dec. ¶ 22),

ECF No. 34-7.)  With regard to each position, Naji either voluntarily withdrew her application, was rejected, or the position remained unfilled.  (Id. Ex. D (Willis Dec. ¶ 22), ECF No. 34-7.)

Naji filed the instant case against Fluor in the Greenville County Court of Common Pleas on May 3, 2019.  (Compl., ECF No. 1-1.)  The case was removed to this court pursuant to federal question jurisdiction on June 21, 2019.  (Not. Removal, ECF No. 1.)  Fluor filed a motion for summary judgment on December 4, 2020.  (Mot. Summ. J., ECF No. 34.)  Naji filed a response in opposition on December 29, 2020.  (Resp., ECF No. 37.)  Fluor filed a reply on January 11, 2021.  (Reply, ECF No. 42.)  Naji filed a sur reply on January 21, 2021.  (Sur Reply, ECF No. 46.)  Fluor filed a sur sur reply on January 29, 2021.  (Sur Sur Reply, ECF No. 50.)  On March 5, 2021, the magistrate judge issued the Report and Recommendation recommending that the court grant in part and deny in part Fluor's motion for summary judgment.  (R&R, generally, ECF No. 52.)  On March 26, 2021, both Naji and Fluor filed objections to the Report and Recommendation.  (Pl. Objs., ECF No. 55); (Def. Objs., ECF No. 56.)  On April 9, 2021, Fluor filed a reply to Naji's objections.  (Def. Reply to Objs., ECF No. 61.)  On the same day, Naji filed a reply to Fluor's objections.  (Pl. Reply to Objs., ECF No. 62.)  This matter is ripe for review.

## II. DISCUSSION OF THE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor.

See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Monahan v. County of Chesterfield, 95 F.3d 1263, 1265 (4th Cir. 1996). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Ballenger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987).

### B. Objections to the Report and Recommendation

Both parties filed objections to the Report and Recommendation. Objections to the Report and Recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). In the absence of specific objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Naji objects to the magistrate judge's recommendation to grant Fluor's motion for summary judgment as to her national origin and religious discrimination claims. (Pl. Objs.,

generally, ECF No. 55.)  Fluor objects to the magistrate judge's recommendation to deny its motion for summary judgment as to the retaliation claim based on the issuance of the PIP and Naji's termination.  (Def. Objs., generally, ECF No. 56.)

**1. Burden Shifting Framework in Employment Cases**

Title VII prohibits an employer from both (i) discriminating against an employee on the basis of race, color, religion, sex, or national origin, and (ii) retaliating against an employee for complaining about prior discrimination or retaliation.[6] 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a). "Plaintiffs may prove these violations either through direct and indirect evidence of retaliatory animus, or through the burden-shifting ['pretext'] framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Foster v. Univ. of Maryland-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015).  Naji is proceeding under the McDonnell Douglas framework.

Under the McDonnell Douglas framework, "the plaintiff must first establish a prima facie case of employment discrimination or retaliation." Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016) (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-56 (1981)).  If the plaintiff succeeds, "the burden of production then shifts to the employer to articulate a non-discriminatory or non-retaliatory reason for the adverse action." Id. (citing Burdine, 450 U.S. at 252-56).  If the employer carries its burden, "the burden then

---

[6] Title VII's retaliation provision forbids an employer from taking action that discriminates against an employee because that employee has either "opposed any practice made an unlawful employment practice by this subchapter" or has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 2 U.S.C. § 2000e-3(a).  "Employees engage in protected oppositional activity when, inter alia, they complain to their superiors about suspected violations of Title VII." Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) (en banc) (internal quotation marks omitted).

shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and that the true reason is discriminatory or retaliatory." Id. (Id. (citing Burdine, 450 U.S. at 252-56). "The final pretext inquiry 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination,' which at all times remains with the plaintiff." Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 294 (4th Cir. 2010) (quoting Burdine, 450 U.S. at 256); see also Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 267 (4th Cir. 2005) ("Although the evidentiary burdens shift back and forth under the McDonnell Douglas framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all time with the plaintiff.") (internal citations and quotations omitted).

      In Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 143 (2000), the Supreme Court stated that with respect to proving pretext "a plaintiff 'must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination [or retaliation].'" Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007) (quoting Reeves, 530 U.S. at 143 (internal quotation marks omitted)). "A plaintiff could accomplish this goal 'by showing that the employer's proffered explanation is unworthy of credence.'" Id. (quoting Burdine, 450 U.S. at 256).

## 2. Discrimination Claims[7]

Naji alleges national origin and religious discrimination in violation of Title VII concerning the issuance of the PIP and her termination. (Compl. ¶¶ 35-46, ECF No. 1-1.) To demonstrate a prima facie case of discrimination, Naji must show: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Maryland Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citation omitted).

> An adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment. The mere fact that a new job assignment is less appealing to the employee, however, does not constitute adverse employment action. There must be some significant detrimental effect and absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position.

Holland, 487 F.3d at 219 (internal quotation marks and citations omitted).

In her Report and Recommendation, Magistrate Judge Austin recommends granting Fluor's motion for summary judgment as to Naji's discrimination claims. Specifically, the magistrate judge concluded that Naji failed to demonstrate "sufficient evidence of valid comparators" under the fourth element and thus failed to make a prima facie case of discrimination. (R&R 21 & n.10, ECF No. 52.) Naji objects to this conclusion and argues that she has in fact established a prima facie case of discrimination. (Pl. Objs., generally, ECF No. 55.)

---

[7] Naji does not object to the recommendation to grant summary judgment as to her discriminatory failure to re-hire claim. (Pl. Objs., generally, ECF No. 55.)

13

Naji claims that former co-workers Patrick Washington, Derrick Hallums and Danette Poole are valid comparators. (Resp., generally, ECF No. 37); (Sur Reply, 2-4, ECF No. 46.) However, as the report and recommendation noted, the record is devoid of any evidence indicating either the national origin or the religious background of any of these individuals. In her objections, Naji first argues that Fluor has the burden of proving "the absence of a material fact in dispute as to an element of the underlying claim." (Pl. Objs. 2, ECF No. 55.) Naji has conflated the standard. As the plaintiff, the burden is on Naji to establish a prima facie case for discrimination. See, e.g., Bryant v. Bell Atl. Maryland, Inc., 288 F.3d 124, 133 (4th Cir. 2002). Further, with respect to summary judgment, as the non-moving party, Naji has "the ultimate burden of demonstrating a genuine issue of material fact for trial." Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Naji next argues that if "the other team members [ ] were also practicing Muslims, it would make no sense that Naji would have been singled out" based on her national origin and religious background. (Pl. Objs. 4-6, ECF No. 55.) Naji also argues that the only logical conclusion is that Washington and Poole do not share her national origin and cultural background because they would not have commented on Naji's religious and cultural background if they did. (Id., ECF No. 55.) Finally, Naji argues that based on demographic data, it is unlikely that the purported comparators are Iraqi natives or practicing Muslims. (Id. 6-8, ECF No. 55.) Naji's arguments are speculative and without merit. It is entirely possible that an individual of one race or religion could discriminate against members of his or her own

race or religion. Naji's conclusory and speculative allegations that Washington, Hallums, and Poole are outside of her protected class do not suffice.

Based on the foregoing, Naji's objection that the magistrate judge erred in concluding that Naji failed to establish a prima facie case of national origin and religious discrimination is without merit. The court grants Fluor's motion for summary judgment on Naji's national origin and religious discrimination claims.

### 3. Retaliation Claims[8]

Fluor objects to the magistrate judge's recommendation to deny summary judgment for Naji's retaliation claim based on the PIP and her termination. (Def. Objs., generally, ECF No. 56.) "Unlike discrimination plaintiffs, retaliation plaintiffs are limited to 'traditional principles of but-for causation' and must be able to prove that 'the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" Foster v. Univ. of Maryland-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015) (quoting Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013). To establish a prima facie case of retaliation, Naji must demonstrate "(1) that she engaged in protected activity, (2) that the employer took a materially adverse action against her and (3) there is a causal connection between the protected activity and the adverse action." Evans v. International Paper Co., 936 F.3d 183, 195 (4th Cir. 2019) (citations omitted). "'Protected activity' is that which falls under the participation or opposition clauses of Title VII's retaliation provision." Emami v. Bolden, 241 F. Supp. 3d 673, 681 (E.D. Va. 2017) (citing Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998)). To establish a materially adverse action,

---

[8] Naji does not object to the recommendation to grant summary judgment as to her retaliatory failure to re-hire claim. (Pl. Objs., generally, ECF No. 55.)

> a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. The Supreme Court emphasized that the "materiality" requirement was necessary to ensure that only significant harms would be actionable. Courts should look at the particular circumstances of the alleged act of retaliation. As the Supreme Court has stated, "[c]ontext matters."

Evans, 936 F.3d at 195 (internal citations and quotation marks omitted).

In her Report and Recommendation, the magistrate judge assumed, without deciding, that Naji had demonstrated a prima facie case. (R&R 24 & n. 13, ECF No. 52.) The magistrate judge then concluded that Fluor had satisfied its burden of production under the McDonnell Douglas framework to articulate a legitimate, nonretaliatory reason for the issuance of the PIP and Naji's discharge. (Id. at 24, ECF No. 52.) Finally, the magistrate judge concluded that Naji had established a genuine issue of material fact regarding causation and pretext. (Id. at 25, ECF No. 52.) Fluor objects to the report and recommendation, arguing that Naji is unable to establish the causation element of a retaliation claim. (Def. Objs., generally, ECF No. 56.)

Under the McDonnell Douglas framework, Naji must establish causation at two different stages: "first, in making a prima facie case, and second, in proving pretext and satisfying her ultimate burden of persuasion." Foster, 787 F.3d at 250. The burden for establishing causation at the prima facie stage is "less onerous" than the burden for establishing causation at the pretext stage. Id. at 251 ("Adopting the contrary rule (and applying the ultimate causation standard at the prima facie stage) would be tantamount to eliminating the *McDonnell Douglas* framework in retaliation cases . . . ."). If Naji satisfies the less onerous standard and establishes a prima facie case, she must still meet the but-for causation required in establishing pretext. See id. at 251-52. In order to carry this burden, Naji must establish "both that the

16

[employer's] reason was false and that [retaliation] was the real reason for the challenged conduct." Id. at 252.  In other words, Naji must show "proof at the pretext stage that retaliation was a but-for cause" of the materially adverse action.  Id.

Fluor first argues that it was "clear error" for the magistrate judge to assume, without deciding, that Naji had established a prima facie case of retaliation.  (Def. Objs., generally, ECF No. 56.)  This objection is without merit.  Under the McDonnell Douglas framework, if the plaintiff establishes a prima facie case of retaliation, "[t]he burden then shifts to the [employer] to show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason."  Foster, 787 F.3d at 250 (citation omitted).  "If the [employer] carries this burden of production, the presumption raised by the prima facie case is rebutted."  Texas Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 255 (1981).  However, "[w]here the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie case*, whether the plaintiff really did so is no longer relevant."  U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983).  Thus, if the employer asserts a legitimate, nonretaliatory reason for the challenged actions, then it has done everything that would be required of it and whether the plaintiff actually made out a prima facie case is "no longer relevant."  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510 (1993); Aikens, 460 U.S. at 715.  As stated above, the magistrate judge concluded that Fluor "articulated a legitimate, nonretaliatory reason for its actions."  (R&R 24, ECF No. 24.)  Fluor does not dispute this conclusion.  The court finds Fluor's argument regarding the prima facie case is unavailing.  See, e.g., Brady v. Off. of Sergeant at Arms, 520 F.3d 490, 493-94 (D.C. Cir. 2008).

Turning to pretext and Naji's ultimate burden of persuasion, Fluor argues that the magistrate judge improperly found a genuine issue of material fact exists with respect to causation. (Def. Objs., generally, ECF No. 56.) In other words, Fluor argues that Naji cannot establish pretext because she has not met the but-for causation standard. (See id., generally, ECF No. 56.)

The court has thoroughly reviewed the record and finds that genuine issues of material fact exist as to the causation element of Naji's retaliation claim. There is a factual dispute as to when Snow, Sullivan, and Willis became aware of Naji's intent to file a complaint against Sullivan and the causal connection between this knowledge and the decision to issue the PIP and ultimately terminate Naji. For example, whether Naji informed Snow on March 8, 2017 of her intent to file a discrimination complaint and of the substance of her complaints is highly relevant in considering the motivation for certain adverse actions taken by Sullivan and Willis on March 8 and in the days that followed with respect to the PIP and Naji's ultimate termination. The court emphasizes its role is not that of the fact finder. See Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 569 (4th Cir. 2015) ("The court . . . cannot weigh the evidence or make credibility determinations.") (citations omitted); see also Aikens, 460 U.S. at 716 ("[C]ourts should [not] treat discrimination differently from other ultimate questions of fact.").

Based on the foregoing, the court finds there are genuine issues of material fact whether retaliation was a but-for cause of the issuance of the PIP or Naji's termination, and whether Fluor's reasons were actually a pretext for retaliation. Fluor's objections to the magistrate

judge's report and recommendation are without merit. Therefore, Fluor's motion for summary judgment is denied for the retaliation claim based on the PIP and Naji's termination.

## IV. CONCLUSION

Therefore, after a thorough review of the magistrate judge's Report and the record in this case, the court adopts Magistrate Judge Austin's Report and Recommendation and incorporates it herein by reference.[9]

Therefore, it is

**ORDERED** that Fluor's motion for summary judgment, docket number 34, is granted in part and denied in part.

**IT IS SO ORDERED**.

s/Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
May 3, 2021

---

[9] Naji's counsel has expressed frustration with the abusive use of footnotes by Fluor's counsel. The court agrees. Fluor's counsel has clearly used excessive substantive footnotes to circumvent the briefing page limits set out by Local Rule 7.05. Fluor's counsel is admonished to avoid this practice in the future.

19